UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| FARMERS & MERCHANTS BANK, | ) |
| :--- | :--- |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 1:08-cv-161 |
| MARGARET LUANNE PUTNAM, | ) ) ) |
| Defendant. | ) |

## OPINION AND ORDER

### I. INTRODUCTION

Plaintiff Farmers & Merchants Bank ("F & M Bank") filed this action on June 13, 2008, against Defendant Margaret Luanne Putnam, a licensed real estate appraiser, advancing claims of negligence, deception or fraud under Indiana Code § 35-43-5-3(a)(2) and (6), and fraud on a financial institution under Indiana Code § 35-43-5-8(a)(1).[1] The claims arise out of an appraisal Putnam performed on September 13, 2001, on certain real estate purchased by David Schimmele, who F & M Bank loaned $200,000.

Putnam has now filed a motion for summary judgment (Docket # 17), asserting that F & M Bank's claims are barred by the two-year statute of limitations because F & M Bank knew or should have known of its injury on or before April 27, 2006. In response (Docket # 24), F & M Bank contends that its claims are timely because it did not discover its injury until June 19, 2006, and that it also pled a common law fraud claim, which has a six-year statute of limitations. Putnam disputes F & M Bank's assertions in her reply (Docket # 28), arguing that F

---

[1] Diversity jurisdiction exists under 28 U.S.C. § 1332(a). Jurisdiction of the undersigned Magistrate Judge is based on 28 U.S.C. § 636(c), all parties consenting.

& M Bank did not plead a common law fraud claim and that even if it had, it would fail as a matter of law because under Indiana law appraisals are only opinions of value, not statements of past or existing fact.

The Court called for further briefing on whether F & M Bank had pled a common law fraud claim and whether a common law fraud claim based on a real estate appraisal is cognizable under Indiana law. (Docket # 35.) Putnam filed her sur-response on these matters on March 26, 2008 (Docket # 36), asserting that she pled not only a common law fraud claim but also a constructive fraud claim, and F & M Bank filed its sur-reply on April 13, 2009 (Docket # 37), disputing Putnam's contentions. The matter is now fully briefed.

For the reasons provided, Putnam's motion for summary judgment will be GRANTED IN PART and DENIED IN PART.[2]

## II. FACTUAL BACKGROUND[3]

The parties have created a voluminous record in the face of summary judgment, setting forth many details pertaining to F & M Bank's loan to Schimmele and their actions thereafter. Much of this history, however, is not material to the Court's decision and thus will not be reiterated here.

On September 20, 2001, Monteal Lepper, chief executive officer of F & M Bank at the time, submitted to F & M Bank's loan committee a $200,000 loan request from Schimmele, who

---

[2] Also pending are Putnam's motion to designate supplemental evidence in support of her motion for summary judgment (Docket # 29), and her motion to strike, seeking to strike a portion of Jeffrey Gump's affidavit (Docket # 30). Because the Court ultimately grants summary judgment in Putnam's favor on F & M Bank's negligence and statutory fraud claims without considering the supplemental evidence Putnam seeks to designate and her arguments associated therewith, and without striking any of Gump's affidavit, these motions will be DENIED AS MOOT.

[3] For summary judgment purposes, the facts are recited in the light most favorable to F & M Bank, the nonmoving party. *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).

then served as the chief financial officer of First National Bank of Fremont ("FNBF"). (F & M Bank Dep. Ex. 7 at 2.) Schimmele wanted to use the loan proceeds for investment purposes to purchase a seventy-seven acre parcel of real estate in Steuben County, Indiana, for the price of $624,000. (F & M Bank Dep. Ex. 5 at 2, Ex. 7 at 2; Lepper Dep. 20.) Schimmele planned to resell the real estate and then use the proceeds to pay off the loan. (Lepper Dep. 33.)

The loan committee approved a temporary loan to Schimmele that same day and issued him a check in the amount of $200,000. (Lepper Dep. 33, 37-38; F & M Bank Dep. Ex. 7 at 2.) Schimmele then closed on the purchase of the real estate five days later, on September 25, 2001. (Lepper Dep. 40; F & M Bank Dep. Ex. 19 at 5-6.)

In October 2001, Schimmele gave Lepper a title search report and an appraisal of the real estate. (Lepper Dep. 35, 57, 60; F & M Bank Dep. Exs. 10, 19.) The appraisal was dated September 13, 2001, and was prepared by Putnam, a licensed real estate appraiser, "for the exclusive use of Mr. David G. Schimmele and Farmers and Merchants Bank of Laotto . . . for mortgage underwriting purposes." (Putnam Dep. 5-9; Lepper Dep. 59, 70; F & M Bank Dep. Exs. 9, 10.) The appraisal reflected a valuation date of June 22, 2001, and valued the real estate at $616,000. (F & M Bank Dep. Ex. 10 at 1, 2.) Though Lepper was personally unfamiliar with Putnam, Schimmele informed Lepper that FNBF used Putnam as an appraiser all of the time and that she was familiar with the area. (Lepper Dep. 59, 68, 70; F & M Bank Dep. Exs. 9, 10.) F & M Bank never had the real estate independently appraised, nor did the loan committee or one of F & M Bank's approved appraisers review Putnam's appraisal. (Lepper Dep. 59, 65-66, 71-72; Gump Dep. 24.)

F & M Bank's loan committee soon approved Schimmele's permanent financing based

on his personal financial statement showing a net worth in excess of one million dollars, its taking a second mortgage on the real estate, and Schimmele's pledge of shares of stock in American Heritage Banco (the holding company of FNBF), believed to be valued in excess of $200,000.[4] (Lepper Dep. 10, 73-79; Gump Aff. ¶ 13; Gump Dep. 27; F & M Bank Dep. Ex. 7 at 2; Guthrie Dep 13.) Consequently, on October 29, 2001, F & M Bank closed on a thirty-month loan to Schimmele in the amount of $200,000 with a maturity date of April 29, 2004, with the understanding that the real estate would be sold or developed within that time. (Gump Dep. 21; Lepper Dep. 83; F & M Bank Dep. Ex. 4.)

Prior to the April 29, 2004, maturity date, however, Schimmele requested a one-year extension on the loan. (Lepper Dep. 84-85; F & M Bank Dep. Ex. 6.) F & M Bank's loan committee approved Schimmele's request without ordering a re-appraisal of the real estate; Schimmele did submit, however, an updated financial statement reflecting that his net worth had more than doubled during the thirty-month loan period and was now over two million dollars. (Lepper Dep. 85-88, 90; F & M Bank Dep. Ex. 6 at 7, Ex. 7 at 3.)

In late 2004, F & M Bank received subpoenas from the Office of the Comptroller of the Currency ("OCC"), requesting information about any loans or activity between F & M Bank and the bank officers at FNBF, including Schimmele. (Lepper Dep. 90-92.) Sometime that same year, Schimmele resigned as chief financial officer of FNBF. (Schimmele Dep. 4-5.)

On June 28, 2005, Schimmele entered into a note modification agreement with F & M Bank extending his loan repayment date until October 3, 2005. (Lepper Dep 96-97; F & M Bank Dep. Ex. 15.) F & M Bank did not require a re-appraisal of the property or an updated financial

---

[4] SkyBank took a $424,000 first mortgage on the property. (Lepper Dep. 37-38, 44-45, 48.)

4

statement from Schimmele. (Lepper Dep. 98-01.)  By this time, Lepper was aware that Schimmele was involved in the OCC's investigation of FNBF and that Schimmele's pledged stock may have diminished in value. (Lepper Dep. 97-99.)

Schimmele signed a second note modification agreement with F & M Bank on October 5, 2005, extending the maturity date for repayment of his loan to January 3, 2006. (Lepper Dep. 102; F & M Bank Dep. Ex. 16.)  Once again, F & M Bank did not require a current financial statement from Schimmele or that the property be re-appraised. (Lepper Dep. 104-05.)

And, on January 3, 2006, Schimmele signed yet another note modification agreement, giving him until April 3, 2006, to pay the outstanding loan amount to F & M Bank. (Lepper Dep. 110; F & M Bank Dep. Ex. 17.)  As with several of the prior extensions afforded to Schimmele, F & M Bank did not perform a second appraisal of the real estate or require Schimmele's updated financials. (Lepper Dep. 113-14.)  Nonetheless, Schimmele's loan was reviewed yearly by F & M Bank's internal and external auditors and regularly by state and federal regulators and other bank examiners, and it was never questioned or criticized. (Gump Aff. ¶ 15; Lepper Dep. 126; Gump Dep. 39.)

On March 27, 2006, F & M Bank's counsel sent a letter to Schimmele's attorneys, advising them that Schimmele's note would mature on April 3, 2006. (Def.'s Br. in Supp. of Mot. for Summ. J. Ex. 21.)  In that letter, F & M Bank acknowledged that Schimmele was having the real estate appraised and that the Indiana Department of Natural Resources had made an offer to purchase the real estate at the appraised value. (Def.'s Br. in Supp. of Mot. for Summ. J. Ex. 21.)  Schimmele, however, failed to meet F & M Bank's deadline and defaulted on the loan. (Lepper Dep. 115.)

5

Consequently, since by all accounts the value of the real estate would not come close to satisfying F & M Bank's second mortgage, F & M Bank sued Schimmele on April 27, 2006, in Allen Circuit Court, Cause No. 02C01-0604-PL-46, for fraud.[5] (Lepper Dep. 114-15; F & M Bank Dep. Ex. 11.) In its complaint, F & M Bank claimed that "Schimmele knew that the real estate was worth less than the $616,000 appraised value when he applied for the loan[, and that] Schimmele's statement concerning the value of the real estate was false when he made it." (F & M Bank Dep. Ex. 11 at 5 ¶ 34.)

On June 16, 2006, Schimmele filed an answer in the Allen Circuit Court lawsuit, which revealed that Schimmele had learned just the day before that the property had actually been re-appraised for $250,000 on February 18, 2006, by All Appraisals Inc., on behalf of the Indiana Department of Natural Resources. (Schimmele Aff ¶¶ 14, 15, Ex. A; Def.'s Br. in Supp. of Mot. for Summ. J. Ex. 23.) F & M Bank received Schimmele's answer on June 19, 2006. (Gump Aff. ¶ 12.) F & M Bank asserts that Schimmele's answer was the first notice it had that deficiencies existed with the Putnam 2001 appraisal. (Gump Aff. ¶ 12.)

On June 13, 2008, F & M Bank filed the instant suit against Putnam in Allen Circuit Court, and Putnam later removed it to this Court. (Docket # 1, 2.)

### III.  SUMMARY JUDGMENT STANDARD

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P 56(c); *Payne*, 337 F.3d at 770.

---

[5] Three months later, the Allen Circuit Court approved an agreed judgment between F & M Bank and Schimmele, granting F & M Bank a judgment against Schimmele in the amount of $208,228.05. (Def.'s Br. in Supp. of Summ. J. Ex. 22.)

A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Ballance v. City of Springfield*, 424 F.3d 614, 617 (7th Cir. 2005).

When ruling on a motion for summary judgment, "a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." *Payne*, 337 F.3d at 770. The only task in ruling on a motion for summary judgment is "to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Id.*; *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). If the evidence is such that a reasonable factfinder could return a verdict in favor of the nonmoving party, summary judgment may not be granted. *Payne*, 337 F.3d at 770.

A court must construe the record in the light most favorable to the nonmoving party and avoid "the temptation to decide which party's version of the facts is more likely true," as "summary judgment cannot be used to resolve swearing contests between litigants." *Id.* However, "a party opposing summary judgment may not rest on the pleadings, but must affirmatively demonstrate that there is a genuine issue of material fact for trial." *Id.* at 771; *Scott v. Harris*, 127 S. Ct. 1769, 1776 (2007) (instructing that in determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts").

## IV. DISCUSSION

### A. Summary Judgment Will Be Granted on F & M Bank's Claims of Negligence, Deception or Fraud Under Indiana Code § 35-43-5-3(a)(2) and (6), and Fraud on a Financial Institution Under Indiana Code § 35-43-5-8(a)(1)

Putnam contends that she is entitled to judgment as a matter of law because F & M

Bank's claims of negligence, deception or fraud under Indiana Code § 35-43-5-3(a)(2) and (6), and fraud on a financial institution under Indiana Code § 35-43-5-8(a)(1), are barred by Indiana's two-year statute of limitations. Putnam's motion for summary judgment on this basis is persuasive.

"Summary judgment is properly granted on the basis of a statute of limitations defense, if (1) the statute of limitations has run, thereby barring the plaintiff's claim as a matter of law, and (2) there exist no genuine issues of material fact regarding the time at which plaintiff's claim has accrued and the application of the statute to plaintiff's claim which may be resolved in plaintiff's favor." *Massey v. United States*, 312 F.3d 272, 276 (7th Cir. 2002) (citation and internal quotation marks omitted); *see also Jackson v. Rockford Hous. Auth.*, 213 F.3d 389, 394 (7th Cir. 2000); *Kuemmerlein v. Bd. of Educ. of Madison Metro. Sch. Dist.*, 894 F.2d 257, 260 (7th Cir. 1990); *Avery v. Mapco Gas Prods., Inc.*, 848 F. Supp. 1388, 1392-93 (N.D. Ind. 1991). "Although the question of when a cause of action accrues is generally one for the jury, when a defendant requests summary judgment on the basis of a statute of limitations, the plaintiff must present facts raising a genuine issue in order to avoid the statute of limitations." *Avery*, 848 F. Supp. at 1393.

Here, the parties agree that the statute of limitations in Indiana for claims based upon negligence, statutory fraud or deception, and fraud on a financial institution and the related Crime Victim's Statute is two years.[6] *See* Ind. Code § 34-11-2-4; *Resolution Trust Corp. v.*

---

[6] Indiana Code § 34-24-3-1 allows F & M Bank as an alleged victim of the crime of deception or fraud under Indiana Code § 35-43-5-3(a)(2) and (6), or fraud on a financial institution under Indiana Code § 35-43-5-8(a)(1), to bring a civil action against the person who caused the pecuniary loss, and to recover treble damages, costs of the action, reasonable attorney fees, as well as other reasonable costs of collection. The Indiana Court of Appeals has instructed that an action brought under Indiana Code § 34-24-3-1 must be commenced within two years after the cause of action accrues. *See, e.g.*, *Prime Mortgage U.S.A., Inc. v. Nichols*, 885 N.E.2d 628, 639-40 (Ind. Ct. App.

*O'Bear, Overholser, Smith & Huffer*, 840 F. Supp. 1270, 1283 (N.D. Ind. 1993) (stating that under Indiana law the statute of limitations for a negligent appraisal claim is two years); *see also Decatur Ventures, LLC v. Daniel*, 485 F.3d 387, 390 (7th Cir. 2007) (acknowledging that under Indiana law a negligence claim against an appraiser is a claim for professional negligence); *Emmons v. Brown*, 600 N.E.2d 133, 134 (Ind. Ct. App. 1992) (same). The parties further agree that the two years begins to run when "the plaintiff knows, or in the exercise of ordinary diligence could have discovered, that he had sustained an injury as the result of the tortious act of another." Estate of *Spry v. Batey*, 804 N.E.2d 250, 252-53 (Ind. Ct. App. 2004) (citation omitted); *see also Nelson v. Sandoz Pharm. Corp.*, 288 F.3d 954, 964 (7th Cir. 2002); *Hildebrand v. Hildebrand*, 736 F. Supp. 1512, 1517 (S.D. Ind. 1990) ("A statute of limitation will not begin running until a cause of action accrues.").

"For a cause of action to accrue, it is not necessary that the full extent of damage be known or even ascertainable, but only that some ascertainable damage has occurred." *Estate of Spry*, 804 N.E.2d at 253 (citation omitted); *see also Morris v. Mfrs. Life Ins. Co.*, No. EV 95-142-C H/H, 1997 WL 534156, at *5 (S.D. Ind. Aug. 6, 1997); *Hildebrand*, 736 F. Supp. at 1517 ("[T]he 'general rule' is that a cause of action accrues 'when resultant damage [is] ascertained or [is] ascertainable by due diligence.'" (quoting *Burks v. Rushmore*, 534 N.E.2d 1101, 1104 (Ind. 1989)). Stated another way, the discovery rule "does not mandate that plaintiffs know with precision the legal injury that has been suffered, but merely anticipates that a plaintiff be possessed of sufficient information to cause him to inquire further in order to determine whether a legal wrong has occurred." *Perryman v. Motors Mut. Ins. Co.*, 846 N.E.2d 683, 689 (Ind. Ct.

---

2008); *Clark v. Univ. of Evansville*, 784 N.E.2d 942, 945-46 (Ind. Ct. App. 2003); *Browning v. Walters*, 616 N.E.2d 1040, 1047 (Ind. Ct. App. 1993).

9

App. 2006).

Putnam first asserts that F & M Bank should have discovered that it had a potential claim against her for her appraisal on or before October 29, 2001, when it issued the loan to Schimmele allegedly without exercising reasonable diligence in accordance with its own lending policy and federal banking regulations. (Def.'s Br. in Supp. of Mot. for Summ. J. 21-22.) Putnam also asserts that even if F & M Bank did not discover its potential claim in October 2001, it again received notice of the potential claim in 2004 and 2005 when it was issued subpoenas from the OCC concerning Schimmele's loan. (Def.'s Br. in Supp. of Mot. for Summ. J. 22-23.) And finally, Putnam contends that there is absolutely "no doubt" that as of April 27, 2006, F & M Bank had actual knowledge that it may have sustained damages as a result of Putnam's appraisal, because it made the following statement in its complaint against Schimmele filed in Allen Circuit Court: "Schimmele knew that the real estate was worth less than the $616,000 appraised value when he applied for the loan. Schimmele's statement concerning the value of the real estate was false when he made it." (Def.'s Br. in Supp. of Mot. for Summ. J. 22-23 (quoting F & M Bank Dep. Ex. 11 at 5 ¶ 34).)

Indeed, perhaps F & M Bank should have discovered its potential claim on Putnam's appraisal at least by 2004 and 2005 after it had extended Schimmele's loan maturity date three times and had learned of the OCC investigation of FNBF. Yet, the Court need not dwell on this point since as Putnam argues, even stronger, undisputed evidence convinces this Court that F & M Bank's cause of action accrued at least by April 27, 2006 – the date F & M Bank filed its complaint against Schimmele alleging that the real estate was worth less than the appraised value and that his statement concerning the value of the real estate was false. In the face of that April

10

2006 statement, F & M Bank's current assertion that "prior to June 19, 2006, it had no reason to question the accuracy, completeness or validity of the Putnam 2001 Appraisal or to question her competency, professional skills, integrity, or honesty" is a bit hard to swallow. (Resp. Br. 2.)

F & M Bank tries to obviate its April 2006 statement by emphasizing that the complaint against Schimmele "mentions no facts involving Putnam". (Resp. Br. 11.) Nonetheless, it is undisputed that Putnam's 2001 appraisal was the *only* appraisal completed on the property prior to the Indiana Department of Natural Resources's 2006 appraisal referred to in Schimmele's June 2006 answer. Therefore, contrary to its assertion otherwise, F & M Bank clearly doubted the veracity of Putnam's appraisal as early as April 2006. *See generally* Fed. R. Civ. P. 11(b)(3) (articulating that factual contentions in a pleading must have evidentiary support); Ind. Trial Rule 11(A) (stating that the signature of an attorney on a pleading constitutes a certificate by him that he has read it; and that to the best of the attorney's knowledge, information, and belief, there is good ground to support the pleading). In fact, F & M Bank's election not to foreclose on its second mortgage on the real estate when it sued Schimmele in April 2006 suggests that it clearly knew the value of the real estate would not satisfy the underlying debt.

F & M Bank further attempts to recast its April 2006 statement by arguing that the statement indicates what "Schimmele knew – not F&M Bank" and that the statement could simply mean that the real estate was worth some nominal amount less than the appraised value of $616,000. (Resp. Br. 13.) As F & M Bank sees it, its statement imputes no meaningful knowledge to it with respect to whether the Putnam 2001 appraisal was deficiently prepared. Again, F& M Bank's attempt to dissect the language of this statement is utterly unavailing, since it reflects that by at least April 27, 2006, F & M Bank certainly had "sufficient information to

11

cause [it] to inquire further in order to determine whether legal wrong has occurred" concerning Putnam's appraisal. *Perryman*, 846 N.E.2d at 689.

In short, summary judgment is warranted on F & M Bank's claims of negligence and statutory fraud because F & M Bank fails to point to sufficient contradictory evidence which would permit a juror to reasonably conclude that these claims accrued on or after June 13, 2006. *See Avery*, 848 F. Supp. at 1393; *see also Morris*, 1997 WL 534156, at *2 ("[W]here the undisputed facts show that the complaint was filed after the running of the applicable statute of limitations, the court shall enter judgment for the defendant." (citation omitted)); *Hildebrand*, 736 F. Supp. at 1522 ("When a defendant seeks summary judgment on statute of limitations grounds, it becomes incumbent upon the plaintiff to present facts raising a genuine issue in avoidance of the statute of limitations."). Therefore, these claims are barred as a matter of law.

### B. *F & M Bank's Common Law Fraud and Constructive Fraud Claims Will Survive*

Perhaps recognizing that the two-year statute of limitations rings the death knell for its claims of negligence and statutory fraud, F & M Bank now asserts that it *also* pled sufficient facts to state claims of common law fraud and constructive fraud, which are governed by a six-year statute of limitations. (Resp. Br. 2, 9.) As explained *supra*, the Court called for additional briefing on Putnam's contentions that (1) F & M Bank failed to plead a common law fraud claim and (2) that even if it had, this claim would fail as a matter of law because Indiana does not recognize a cause of action for common law fraud based on appraisals.

As to Putnam's contention that F & M Bank pled only statutory fraud claims, the fact that F & M Bank did not specifically assert causes of action labeled "common law fraud" or "constructive fraud" in its complaint is not determinative. While Federal Rule of Civil

12

Procedure 9(b) requires that all averments of fraud be stated with particularity, it "does not require that the complaint explain the plaintiff's theory of the case, but only that it state the misrepresentation, omission, or other action or inaction that the plaintiff claims was fraudulent." *Midwest Commerce Banking Co. v. Elkhart City Centre*, 4 F.3d 521, 523 (7th Cir. 1993); *Siegel v. Shell Oil Co.*, 480 F. Supp. 2d 1034, 1045 (N.D. Ill. 2007); *see also McDonald v. Household Int'l, Inc.*, 425 F.3d 424, 427 (7th Cir. 2005) ("This court has repeatedly held that pleaders in a notice system do not have any obligation to plead legal theories."); *Bartholet v. Reishauer A.G. (Zurich)*, 953 F.2d 1073, 1078 (7th Cir. 1992) ("[A] complaint need not identify a legal theory, and specifying an incorrect legal theory is not fatal."). In fact, "the district court has a duty to consider whether a plaintiff's allegations could provide relief under *any* available legal theory." *Sidney S. Arst Co. v. Pipefitters Welfare Educ. Fund*, 25 F.3d 417, 421 (7th Cir. 1994).

Rather, to plead the "circumstances constituting fraud" with particularity under Rule 9(b), a plaintiff must plead "the who, what, when, where, and how: the first paragraph of any newspaper story." *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990); *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 507 (7th Cir. 2007). Stated another way, where the alleged fraud involves a misrepresentation, Rule 9(b) requires the plaintiff to plead "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff . . . ." *Hefferman v. Bass*, 467 F.3d 596, 601 (7th Cir. 2006) (citation omitted); *Sears v. Likens*, 912 F.2d 889, 893 (7th Cir. 1990).

Here, it is quickly obvious that F & M Bank pled the circumstances constituting the alleged fraud with sufficient particularity. The complaint alleges that Putnam intentionally

13

misrepresented or omitted certain material facts in her September 13, 2001, real estate appraisal and that she knew F & M Bank would rely upon the appraisal. These alleged misrepresentations or omissions included Putnam's failure to disclose that "much of the Real Estate is wetlands[,] . . . about fifteen acres of the Real Estate are swampland[,] . . . the Hillsdale County Railroad crosses through the Real Estate", and that she "misrepresented that the Real Estate was suitable for residential development." (Compl. ¶¶ 23-29.) These allegations were articulated in sufficient detail to put Putnam on notice of the nature of her purported fraudulent acts so that she might adequately defend against them. *See, e.g.*, *Hirate Corp. v. J.B. Oxford & Co.*, 193 F.R.D. 589, 592 (S.D. Ind. 2000) ("Providing the defendant with fair notice is perhaps the most basic consideration underlying Rule 9(b)." (citing *Vicom Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994) (internal quotation marks omitted)).

And, F & M Bank has adequately pled the elements of a common law fraud claim. "To successfully sustain an action for common law fraud, a party must prove five essential elements: (1) a material misrepresentation; (2) of past or existing facts; (3) the falsity of the representation; (4) the representation was made with knowledge or reckless ignorance of its falsity; and (5) the detrimental reliance on the representation." *Cash in a Flash, Inc./Hobart v. Glen Hoffman*, 841 N.E.2d 644, 648 (Ind. Ct. App. 2006) (citation omitted).

In that regard, after detailing the list of Putnam's alleged misrepresentations or omissions, the complaint avers that Putnam "knew her valuation was false and inaccurate" at the time she produced and submitted her appraisal, stating that she "testified in her deposition that she knew about the wetlands and the railroad track crossing the Real Estate." (Compl. ¶ 38; *see also* Compl. ¶¶ 42, 43, 51.) The complaint also alleges that Putnam was "fully aware that F&M

Bank would rely upon her valuation of the Real Estate to decide whether or not to grant Schimmele a permanent loan" (Compl. ¶¶ 12, 33), and that F & M Bank did so to its detriment (Compl. ¶¶ 15, 32, 40, 44, 45, 54).

F & M Bank has also sufficiently pled the elements of a constructive fraud claim. These elements are: (1) a duty owing by the party to be charged to the complaining party due to their relationship, (2) violation of that duty by the making of deceptive material misrepresentations of past or existing facts or remaining silent when a duty to speak exists, (3) reliance thereon by the complaining party, (4) injury to the complaining party as a proximate result thereof, and (5) the gaining of an advantage by the party to be charged at the expense of the complaining party. *Block v. Lake Mortgage Co.*, 601 N.E.2d 449, 451 (Ind. Ct. App. 1992). "Unlike actual fraud, intent to deceive is not an element of constructive fraud. Rather, the law infers fraud from the relationship of the parties and the circumstances which surround them." *Id*.

Here, as explained *supra*, the complaint contends that Putnam knew that F&M Bank would rely upon her appraisal to decide whether to grant Schimmele a loan and that she "breached her legal duty to F&M Bank" by submitting the false appraisal. (Compl. ¶¶ 12, 22, 31, 33.) In fact, the complaint recites on its face that the appraisal was "prepared for the exclusive use of Mr. David G. Schimmele and Farmers & Merchants Bank of Laotto and i[s] to be used for mortgage underwriting purposes." (Comp. ¶ 12.) And, as explained in regard to the common law fraud claim, the complaint adequately describes Putnam's purported misrepresentations and omissions and recites that F & M Bank relied upon the appraisal to its detriment. Finally, the complaint avers that Putnam gained an advantage as a result of her misrepresentation in that she pleased the real estate's seller, the president of FNBF, who was one of her "most frequent clients

15

and a lucrative contact." (Compl. ¶¶ 35, 36.)

As the Seventh Circuit Court of Appeals has emphasized, "[a]ll Rule 9(b) require[s] [is] that [the plaintiff] set forth the date and content of the statements or omissions that it claim[s] to be fraudulent. [The plaintiff is] *not* required to go further and allege the facts necessary to show that the alleged fraud [is] actionable." *Midwest Commerce Banking Co.*, 4 F.3d at 524 (emphasis added). In that regard, Putnam's arguments in her sur-reply broaching the merits of the common law fraud and constructive fraud claims are premature. The only summary judgment motion before the Court rests upon a two-year statute of limitations defense, which is inapplicable to claims of common law fraud and constructive fraud.

And, as to Putnam's contention that a common law fraud claim based on an appraisal fails as a matter of law, it paints an incomplete picture of Indiana law. Indeed, the general rule is that statements of value are regarded as mere expressions of opinion, not fact, and thus are not actionable under a theory of fraud. *See Wheatcraft v. Wheatcraft*, 825 N.E.2d 23, 30-31 (Ind. Ct. App. 2005); *Kreighbaum v. First Nat'l Bank & Trust*, 776 N.E.2d 413, 421 (Ind. Ct. App. 2002); *Block*, 601 N.E.2d at 451. However, courts applying Indiana law have *also* held that if the appraisal does "not actually represent [the appraiser's] genuine opinion," a common law fraud claim is not precluded. *Decatur Ventures, LLC v. Stapleton Ventures, Inc*., No. 1:04-cv-0562-JDT-WTL, 2006 WL 2522367, at *3 (S.D. Ind. Aug. 16, 2006). That is, if F & M Bank can prove that Putnam "intentionally misrepresented the value of the propert[y] in order to meet a predetermined price, and that predetermined price clearly falls [above] where [her] genuine opinion would arrive," then a fraud action based on Putnam's appraisal is viable. *Id*.; *see also Daniel*, 485 F.3d at 390 ("[B]ecause Indiana treats an appraisal as an opinion rather than a fact,

16

the representation could be fraudulent only if the appraisal's author did not believe her own numbers."); *ABN AMRO Mortgage Group, Inc. v. Maximum Mortgage, Inc.*, No. Civ. 1:04CV492, 2005 WL 1162889, at *8 (N.D. Ind. May 16, 2005) (holding that an appraisal may be the basis of a fraud claim). Here, F & M Bank specifically alleged numerous times in its complaint that Putnam intentionally misrepresented the value of the real estate. (*See, e.g.*, Compl. ¶¶ 22, 38, 42, 43, 45, 51.)

In sum, at this stage the Court need only determine whether F & M Bank adequately pled its allegations of common law fraud and constructive fraud with specificity, not whether it will be able to provide evidence to prove these allegations against Putnam. F & M Bank has sufficiently done so, and thus the claims of common law fraud and constructive fraud will survive.[7]

## V. CONCLUSION

Defendant's Motion for Summary Judgment (Docket # 17) is GRANTED with respect to Plaintiff's claims of negligence, deception or fraud under Indiana Code § 35-43-5-3(a)(2) and (6), and fraud on a financial institution under Indiana Code § 35-43-5-8(a)(1), and is DENIED with respect to Plaintiff's claims of common law fraud and constructive fraud.[8] Defendant shall have until May 11, 2009, to file dispositive motions on Plaintiff's surviving claims. The response briefs shall be filed on or before June 11, 2009, and replies are to be filed by July 1,

---

[7] Even though the deadline for filing summary judgment motions expired while the present motion was being briefed, the Court will, on its own motion, extend the deadline so the issues tangentially mentioned in the briefing can be directly addressed if F & M Bank wishes to do so.

[8] Defendant's motion to designate supplemental evidence in support of her motion for summary judgment (Docket # 29), and her motion strike, seeking to strike a portion of Jeffrey Gump's affidavit (Docket # 30) are DENIED AS MOOT.

17

2009.

SO ORDERED.

Entered on this 20th day of April, 2009.

/S/ Roger B. Cosbey
Roger B. Cosbey,
United States Magistrate Judge